Dear Mr. Conner:
On behalf of the Plaquemines Parish Council you have requested an opinion of this office regarding Louisiana Revised Statute 29:727, and its application to the Plaquemines Parish Charter. In short, you ask whether La. R.S. 29:727 is constitutional, in that it provides additional powers to the parish president that go beyond those granted in the parish charter and whether those powers supersede the powers that the parish council would normally have, absent the Declaration of Emergency.
Before beginning our legal analysis, we note that, "Statutes are presumed constitutional, and the burden of proving that an act of the legislature is unconstitutional is upon the party attacking the act."Moore v. Roemer, 567 So.2d 75, 78 (La. 1990). Further, the power of the legislature is plenary, and a party challenging a statute's constitutionality must articulate a particular constitutional provision that limits the legislature's powers. Chamberlain v. State ThroughDOTD, 624 So.2d 874 (La. 1993).
Thus, it is the opinion of this office that La. R.S. 29:727 is constitutional. The complete legal analysis of this answer is contained below.
Article 1, Section 1, of the Louisiana Constitution (1974) provides the following:
 All government, of right, originates with the people, is founded on their will alone, and is instituted to protect the rights of the individual and for the good of the whole. Its only legitimate ends are to secure justice for all, preserve peace, protect the rights, and promote the happiness and general welfare of the people. The rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state. (Emphasis added.)
La. R.S. 29:721 through 736, entitled, "Louisiana Homeland Security and Emergency Assistance and Disaster Act" (Act), confers certain powers upon the governor and parish presidents in the event of a declared disaster or emergency. The purpose of the act is more specifically provided for in La. R.S. 29:722, which provides in pertinent part:
 A. Because of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from. . . . fire, flood, earthquake, or other natural or man-made causes, and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and in order to. . . . respond to, or recover from these events, and generally to preserve the lives and property of the people of the state of Louisiana, it is hereby found and declared to be necessary: (Emphasis added.)
 * * * (2) To confer upon the governor and the parish presidents the emergency powers provided in this chapter.
La. R.S. 29:727 provides in pertinent part:
 A. Each political subdivision within this state shall be within the jurisdiction of and served by the Governor's Office of Homeland Security and Emergency Preparedness for purposes of homeland security and emergency or disaster mitigation, preparedness, response, and recovery.
 * * * E. Notwithstanding any other provision of this chapter, when the parish president declares a local disaster or emergency within such subdivision the parish president shall carry out the provisions of this chapter. (Emphasis added.)
Plaquemines Parish is governed by a Home Rule Charter adopted January 1, 1987. The Louisiana Constitution (1974), Article 6, Section 5, provided the Plaquemines Parish governing authority the right to adopt a home rule charter. Article 6, Section 5 (E), provides:
 (E) A Home Rule Charter. . . . shall provide the structure and organization powers and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
Constitutional protection for home rule charters is protection from laws that change or affect the structure and organization or the distribution of the powers and functions of the local governmental subdivision; that is, the legislature cannot enact laws that interfere with the organization and management of the home rule city'saffairs. City of Donaldsonville v. State, 764 So.2d 339 (La.App. 1 Cir. 06/23/00). Here, enforcement of the Act, which the Parish President has purposed to do through the Declaration of Emergency, does not affect the ordinary functions of municipal government or city affairs. It does not appear that the Legislature the intent, in enacting the statute, of authorizing the Governor or Parish President to "interfere" with the ordinary governmental functions or city affairs; nor does it follow that, in complying with any provision of this statute, it would be violative of the Constitution's home rule provision.
It would seem apparent that, in order to promote the safety and general welfare of the people, in the aftermath of Hurricane Katrina, the powers of the parish president, granted through the Parish Charter, would not suffice in accomplishing the necessary mitigation and recovery efforts needed. The additional powers delegated to the ParishPresident through La. R.S. 29:727, directly correlate with responding and moving forward with the rebuilding process during the aftermath of Katrina.
Therefore, it is the opinion of this office that La. R.S. 29:727 is constitutional, and power does exist for a parish president to have authority that goes beyond the powers designated to him in the Plaquemines Parish Charter.
Upon further review of the Plaquemine Parish Charter and Section 727, there does not appear to be any specific powers granted to the parish council that directly conflict with those powers granted to the parish president under Section 727. However, once adopted, the Plaquemines Parish Charter established a legislative branch (Parish Council) and an executive branch (Parish President) with distinct areas of responsibility. The Parish Council, as the legislative branch of a home rule municipality, may not usurp authority delegated to the Parish President as executive branch, either by home rule charter, the constitution, or state laws. Thus, if the same powers are delegated to both the Parish Council and the Parish President, the powers conferred upon the Parish President would supersede those of the Parish Council. See also, Atty. Gen. Op. 98-83.
In your request, you ask whether the parish president can deny a councilman access to meetings. The open meetings laws, La. R.S. 42:4 et seq., defines the terms, "meetings" and "public body."[1] In applying R.S. 42:4, the parish president can not be identified as a public body, nor is he the governing authority which would allow him to hold public meetings.
Therefore, it is the opinion of this office that the Parish President is not subject to open meetings laws in this regard and, thereby, would be within his rights to deny access to his private meetings to anyone, including a councilman.
The final issue that you raise in your request is, whether the Plaquemines Parish President is immune from any and all liability, either civilly or criminally, for the action that he takes while under the Declaration of Emergency.
Pursuant to La. R.S. 29:735, parish officials are given immunity for injury or property damage for acts under the Louisiana Emergency Assistance and Disaster Act, unless the acts constitute willful misconduct. See also Atty. Gen. Op. 99-72. La. R.S. 29:735 provides in pertinent part:
 A. (1) Neither the state nor any political subdivision thereof; nor other agencies, nor, except in case of willful misconduct, the agents' employees or representatives of any of them engaged in any homeland security and emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity.
(Emphasis added.)
Therefore, it is the opinion of this office that, the Parish President is given immunity from liability to the extent that the activity is not a result of willful conduct.
In conclusion, we refer you to La. R.S. 29:727(D), which provides in pertinent part:
 D. A local disaster or emergency. . . . The state of emergency or disaster may be terminated by the governor, a petition signed by a majority of the surviving members of either house of the legislature, or a majority of the surviving members of the parish governing authority. . . . Any order or proclamation declaring, continuing, or terminating a local disaster or emergency shall be given prompt and general publicity and shall be filed promptly with the office of emergency preparedness and the office of the clerk of court.
It is the opinion of this office that, although the Parish President has authority under Section 727 of the Louisiana Homeland Security and Emergency Assistance and Disaster Act, the Parish Council has the power as the governing authority for Plaquemines Parish, to terminate the disaster or emergency declaration, and thereby stop the Parish President from exercising his powers under La. R.S. 29:727, in accordance with the provisions in the statute.
In summary, it is the opinion of this office that the Louisiana Homeland Security and Emergency Assistance and Disaster Act, specifically, La. R.S. 29:727, is constitutional in that it delegates additional powers to the Parish President that go beyond those granted by the Plaquemines Parish Charter. Additionally, it is our opinion that while the powers designated to the Parish President may overlap with powers of the Parish Council, we emphasize that the clear and overriding legislative intent of the statutes has cooperative interaction by and between all responsible levels of government, and confers superior authority on parish presidents in dealing with disasters or emergencies. This statute was designed to promote the health, safety and general welfare of the citizens in recovery from the devastating affects of Hurricane Katrina. Finally, it should be noted that the Parish Council, as governing authority, has the option of terminating the Declaration of Emergency, pursuant to La. R.S. 29:727(D).
We hope the foregoing is helpful to you. Should you have any further inquiries in which we may provide assistance, please contact this office.
 Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 _____________________ LaTonya L. Qzene Assistant Attorney General
 CCF, Jr./LLO/jv Enclosure(s)
[1] R.S. 42:4.2 provides in pertinent part: (1) "Meeting" means the convening of a quorum of a public body to deliberate or act on a matter which the public body has supervision, control, jurisdiction, or advisory power.
(2)"Public body" means village, town, and city governing authorities;
OPINION NUMBER 98-83
Mr. Percy Gabriel, Sr. Attorney General of Louisiana — Opinion. April 15, 1996
71-1-B — Municipalities-Home Rule Charter
Parish Council, as legislative branch of home rule municipality, may not usurp authority delegated to Parish President, as executive branch, in home rule charter.
Mr. Percy Gabriel, Sr., Councilman, District 1, Terrebonne Parish Council, P.O. Box 2768, Houma, LA 70361
Dear Mr. Gabriel:
We have received your opinion request dated January 27, 1998, and the resolution of the Parish Council authorizing the opinion request under cover of Mr. Paul A. Labat's letter of February 12, 1998. The specific question pertains to the authority of the Parish Council to exercise some degree of concurrent authority along with the Parish President over the administration and policy of the HUD Housing Rehabilitation Program currently administered by the Federal Programs Division.
Mr. Labat included a copy of the opinion rendered by Stephen M. LaRussa, Parish Attorney, to Ms. Cheryl Breaux, Federal Programs Division Head. In that opinion, Mr. LaRussa opined that the administration of the CDBG housing rehabilitation programs was an administrative function within the complete control of the Parish President, as chief executive officer of the parish. Given the information provided to this office, we must agree with that conclusion for the reasons stated in that opinion.
The Louisiana Constitution, Art. 6, Sec. 5, provided the Terrebonne Parish governing authority the right to adopt a home rule charter. That charter, once adopted, provided for the distribution of the powers and functions of the government of the parish. The charter established a legislative branch (Parish Council) and an executive branch (Parish President) with distinct areas of responsibility. The Constitution gives the local governing authority complete discretion in the distribution of operations and authority in the charter. Lafourche Parish Council v.Autin, 648 So.2d 343 (La. 1994). La. Const. Art. 6, Sec. 5(E). We agree with Mr. LaRussa's analysis of the charter and local ordinances with regard to the authority granted the executive branch.
We do not see that the administration of the HUD program and the finances from the federal government is outside the scope of authority of the parish under the provisions of Subsection 5(E) of Art. 6 of the Constitution. The Parish Council, by ordinance, granted the planning and economic development director "responsibility for overall management of all federal community development block grant programs". Parish Code Chapter, 2, Section 277(b). As stated in Mr. LaRussa's opinion, the Charter also provides the director of planning and zoning with responsibility for administration of federal housing grants. Parish Charter Article IV, Section 4-07(b). Given these two provisions, it appears that under either one the administration of the federal funds is an executive function and outside the scope of authority of the Parish Council as the legislative branch of government.
I hope this is responsive to your request, but should you have any addition information or questions, please contact the undersigned at your convenience.
 Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _____________________ ROBERT B. BARBOR Assistant Attorney General
 RPI:RBB:glb
OPINION NUMBER 99-72 Colonel Michael L. Brown Attorney General of Louisiana — Opinion. April 06, 1999
 64-B Military Department R.S. 29:735
Parish Officials are given immunity for injury or property damage for acts under the Louisiana Emergency Assistance and Disaster Act unless for willful misconduct.
Colonel Michael L. Brown, Office of Emergency Preparedness, Military Department, State of Louisiana, P.O. Box 44217, Baton Rouge, LA 70804
Dear Colonel Brown:
This office is in receipt of your request for an opinion of the Attorney General in regard to plans for emergency preparedness. You indicate that the Louisiana Office of Emergency Preparedness has found that special needs agencies, such as nursing homes, must do better emergency planning, and that their plans need to be reviewed for flaws and duplication of resources by Parish Offices of Emergency Preparedness. However, these Parish Offices state that they have been advised that the act of reviewing a plan would implicate the office in liability for any subsequent planning or execution failures, and, therefore, they decline to review nursing home plans. The Office of Emergency Preparedness believes that there would be immunity from liability for good faith efforts by officials and volunteers, and asks the following questions:
 1. Does the law, as it exists, protect parish officials from liability for good faith efforts to promote emergency preparedness by reviewing private and corporate emergency plans; and
 2. If the present law were deficient in protecting parish officials from liability, what legislation would be needed to perfect the law?
In response to your first question we find in Title 29, Military, Naval, and Veterans' Affairs, Chapter 6, The Louisiana Emergency Assistance and Disaster Act, that R.S. 29:735, entitled "Immunity of Personnel", provides as follows:
 A. Neither the state nor any political subdivision thereof, nor other agencies, nor, except in case of willful misconduct, the agents' employees, or representatives of any of them, engaged in any emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.
Therefore, we find that the present law protects parish officials and their representatives for injury or property damage by immunity for acts under the authority of the Louisiana Emergency Assistance and Disaster Act unless from "willful misconduct". Accordingly, we do not find that the act of the Parish Offices of Emergency Preparedness by "good faith efforts" in reviewing plans of private and corporate entities would create any liability on their part for any subsequent planning or execution failures inasmuch as a finding of liability demands "willful misconduct" occur.
Having found the present law sufficient to insure immunity for good faith efforts in emergency preparedness, we do not believe any further legislation is necessary to protect Parish Offices of Emergency Preparedness in regard to their action in reviewing private and corporate emergency plans.
We hope this sufficiently answers your inquiry.
 Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: _____________________ BARBARA B. RUTLEDGE Assistant Attorney General
 BBR